Pbioe, C. J.
The plaintiff and defendants own lands in Union county which are divided by “Bokes Creek,” and the tract of each party extends to the center of the stream. The plaintiff holds title and possession under conveyance from the heirs of Styles Newhouse, executed in 1897. The defendants have title to and possession of their lands on opposite sides of the stream under John E. Newhouse, the title resting in them through judicial sale.
The latter tract consisted of fourteen acres, and that of the plaintiff contains sixty acres.
■ In 1884-5, John E. desired to convert his fourteen acres into a pleasure resoit, afterwards named “Maple Dell Park”, and to this end, built a dam one hundred feet in length across the creek, one-half of-which would be on hi» *104 own land, and the other half on the land of Stiles New-house. These respective owners held a conversation- on the subject, and John E. obtained verbal .permission to construct the dam,' upon the condition, that if it had caused no damage by the end of a year, it might remain; and it was constructed of cheap material, such as brush and earth, but of no permanent character, and while this was replaced with better material during the third or fourth year, it -seems that the central part of the dam washed out, during freshets each spring season.
During the first year John E. dredged the creek channel above the dam to deepen the water for the use of row boats, as well as to constitute an ice pond duripg the winter; and also laid out drives and walks and planted shade trees. Stiles made no complaint of being damaged at the end of the year, and John E. proceeded to erect a dwelling house, ice house, a creamery,and placed row boats and toboggan slides on the pond, the expense aggregating, about $11,000. The land cost him $100 per acre before these outlays. Stiles N. knew of all these outlays and improvements and the use made of them. ..He died in the year 1888, leaving heirs who, in 1897, cpnveyed their lands to the plaintiff.
After the death of Stiles N, John E. put in a plank dam, but it is fifty feet further down the stream, and he abandoned the old dam, and this was done without any new or other arrangement with the heirs. They, however,made no objections to the change. This plank dam is the subject of the controversy between the parties to this suit.
The defendants became the owners of the fourteen acres through judicial proceedings in 1896, for a consideration of about $100 per acre. The same had been used as a pleasure resort until a year before the sale, and defendants desire to continue such use, which they assert cannot be done, unless this dam is maintained.
Before plaintiff purchased his sixty acres, in company of one of the heirs of Stiles Newhouse he looked over the farm and at what could be seen of the dam, a portion of which had washed out. He inquired if there was any writing or legal right that would continue the dam, and was assured that it had been abandoned, and he purchased believing and relying upon this statement.
*105 After he went into possession, defendants sought to repair the dam, which was objected to by plaintiff, and after some acts of violence, this action is brought to settle the rights of the parties.
The plaintiff avers and proves that this obstruction of the stream causes the overflow of part of his farm at times, and thereby serious damages to his crops on the lower lands, and he denies the right of defendants to longer encumber his premises with any part of the dam. On the other hand, defendants assert this right as existing under the parol license given Stiles Newhouse to John in 1884.
This we deem a fair and sufficient statement of the facts to present the field of contention, and we have the question: is this license still valid and binding on the plaintiff?
It was given without any consideration in 1884 or 5, and was so far executed as to allow the licensee, John New-house, to build fifty feet of the dam on land then owned by Stiles Newhouse, but now by the plaintiff, and the pleasure resort on the opposite side was prepared and expensive improvements made for that purpose, with the expectation that the dam would remain, but there was no definite time spoken of, or mentioned in the parol arrangement, And it is equally true, that to maintain it, so obstructs the stream, that the lands of plaintiff are frequently overflowed to his damage and injury, and it becomes a permanent burden and incumbrance on his premises, and which, to some extent, deprives him of their free use and control, and all this is insisted upon the theory that the license is still in force, because executed, and therefore is irrevocable.
We observe, that unless it be the law, that such executed license constitutes an exception to the operation of our statute of frauds and perjuries, the plaintiff is entitled to the full and free enjoyment of his property, and, to that end, the removal of the darn therefrom.
This statute (section 4198, Revised Statutes) is very comprehensive, and provides, that
“No lease, estate, or interest, either of free-hold, or term of years, or any uncertain interest of, in or out of lands, tenements, or hereditaments, shall be assigned or granted, except by deed or note in writing signed by the. party so assigning or granting the same, or his agent thereunto law *106 fully authorized by writing, or by act and operation of law.”
And section 4199 provides that no action shall be brought to charge a defendant upon any contract or sale of lands, tenements or hereditaments, or any interest in, or concerning them, unless the agreement, or some memorandum or note there is in writing and signed by the party to be charged therewith. We have also, statutory provisions as to the manner of conveying real estate, or any interest therein, and a registry law, requiring the filing and recording of such instruments of conveyance.
There is one exception to the operation of the statute of frauds, so far as a contract for the lease or sale of real estate or an interest in or concerning the same is concerned, and that is where the purchaser enters into possession under the parol contract; but in such case,a conveyance is not dispensed with, but possession may be used as the basis to enforce a proper and lawful conveyance,just as a written contract might be used for the same purpose.
But in this case, no such possession of plaintiff’s land was taken by John E. Newhouse, as to take the case out of the statute of frauds. The only possession had at any time was the construction of one end of the dam and its presence there afterwards. It was not a living, actual possession, and the defendant’s rights are not saved by it because of possession taken under parol contract. The other exception to the operation of the statute of frauds and perjuries, and which is confidently urged in this case, is that thé parol license to erect the dam was executed, and is therefore irrevocable at the instance of the licensor, or his grantees; and the authority for this view is the case of Wilson v. Chalfant, 15 Ohio, 248, where it is expressly declared that a parol license executed is irrevocable. The action was trespass, and based on the fact that Wilson, under a parol contract with Ohalfant, and for a consideration agreed upon, gave Ohalfant license to enter upon lands of Wilson and construct abutments for a dam, which was done, and that after the same had been maintained several years, Wilson caused them to be taken out. Ohalfant asked damgea for the trespass, and the supreme court held that he could recover. The opinion was not of a unanimous court, Judge Birchard doubting the correctness of the holding, it *107 being in the face of our statute of frauds . and perjuries. And we may add, that as a broad and sweeping declaration of the principle, that case stands almost alone among the decided cases, especially those of modern times. We do not hesitate to say that it is against the current of authorities of other states as well as against the views of our eminent text writers on the subject, and while it is not our province to criticise or disregard the decision, we will not recognize it as authority beyond the particular facts upon which it was rendered.
The facts of the case at bar, are somewhat different. There was no consideration paid as in that case, and there the contest was between the parties to the parol contract, while here, the licensor had died, before the licensee lost his property at judicial sale. It is held in some cases that the death of either the licensor or licensee, revokes the license. Again, the plaintiff is an innocent purchaser of his lands; he made inquiry of his grantor as to the presence of a part of the dam, and was assured it had been abandoned. It was then partly destroyed and not in actual use.
We prefer to follow the doctrine of a much later case than Wilson v. Chalfant; the case of Wilkins v. Irvine, 38 Ohio St., 138. In that case a written license had been given to enter upon and imbed water pipes on the land of another, with privilege to repair them, but the writing was unacknowledged and without a seal, and it was held that it created no interest in or incumbrance on the land, such as disabled the owner from making a good and sufficient deed conveying title thereto.
On page 144 the court say:
“An interest in or permanent incumbrance upon land in this state, can only arise from some of the modes provided for or recognized by law. If it exists in this case, the incumbrance was created by a writing without seal and unacknowledged, and unaccompanied by actual possession. * * * It has none of the characteristics and sanctions provided by the statute creating an incumbrance that could possibly impart to the instrument a quality to run with the land. . If its terms had been violated by Brooks or his grantees, the jurisdiction of a court of equity could not have been successfully invoked to enforce specific perform *108 anee.” * * * ‘‘A license to do a particular thing, does not in any degree, trench upon the policy of the statutes requiring that contracts respecting title to lands shall be by deed or other instrument under seal. They amount to no more than an excuse for the act, which would otherwise be a trespass. A permanent right to enter upon and hold another’s land for a particular purpose without his consent, is an important interest which should pass only in the mode and by the instrumentalities provided by law.”
It seems difficult to reconcile this case with Wilson v. Chalfant, supra.
Among the very many cases in other states, is one decided by the supreme court of Minnesota, Johnson v. Skillman, found in 43 American Report, page 192, where it was held: ,
‘‘Where one orally promised others that if they would erect a good custom mill on a certain point on their own lands, he would give them the privilege of flowing his land so long as they would maintain such mill, and they relying on that promise and partly induced by it, erected a dam and mill accordingly at large expense, the promise was a mere license,and revocable even after it had been acted on.”
The notes appended to the report of that case, collate the authorities from other states in support of the above proposition.
And in Lawrence v. Springer, 31 Am. State, 702, is another review of the decided cases, and the principle is [laid down that the death of the licensor, or a conveyance of the premises made by him, will revoke a parol license. The notes to that case are a valuable array of authorities.
But there is another consideration which is decisive of this case. After the death of Stiles Newhouse, the licens- or, the dam erected under his license was abandoned, and the one in dispute was erected fifty feet further down the stream. The heirs of Stiles knew of this change, made no objection; but there was no express arrangement or license for it. The plaintiff is the grantee of these heirs, and we cannot believe the original permission so elastic as to include any point on the creek where the licensee 0might choose to' locate the obstruction; and we have found no authority so broad as to sustain the right to continue this incumbrance on plaintiff’s lands.
Cameron & Son and Broderick, for Plaintiff.
Porter & Son and Wright, for Defendants.
Moreover, the improvements and outlays made under the original license were all made on the lands of the licensee,now owned by defendants, and when they purchased,they paid but the price paid by John Newhouse, their grantor, before improvements and outlays were made, which was about $100 per acre.
So, from any point of view, we find that defendants have neither legal or equitable right to longer maintain the dam on plaintiff’s property, and we decree accordingly.